UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JAMES PETER,

      Plaintiff,

v.                                          Case No. 07-13298

                                            Honorable Patrick J. Duggan

STRYKER ORTHOPAEDICS, INC., THE
STRYKER CORPORATION, STRYKER
BIOTECH, L.L.C., HOWMEDICA
OSTEONICS CORP., STRYKER
TECHNOLOGIES CORP.,

      Defendants.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

At a session of said Court, held in the U.S.
District Courthouse, City of Detroit, County of
Wayne, State of Michigan, on October 6, 2008.

PRESENT:      THE HONORABLE PATRICK J. DUGGAN
                  U.S. DISTRICT COURT JUDGE

On July 3, 2007, Plaintiff James Peter filed this lawsuit in Wayne County Circuit Court, against Defendants Stryker Orthopaedics, Inc., The Stryker Corporation, Stryker Biotech, L.L.C., Howmedica Osteonics Corp., and Stryker Technologies Corp. Plaintiff alleged three claims: statutory products liability, breach of warranty, and a violation of the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.903(y), stemming from injuries he suffered from a prosthetic knee designed, manufactured, and

sold by Defendants. Presently before this Court is Defendant Howmedica Osteonics Corp.'s motion for partial summary judgment on Plaintiff's MCPA and statutory products liability claims. Defendant's motion has been fully briefed, and this Court held a motion hearing on August 20, 2008. For the reasons set forth below, the Court grants in part and denies in part Defendant's motion for partial summary judgment.

**I. Facts and Procedural Background**

After nearly two decades of right knee problems, Plaintiff underwent total knee replacement surgery on June 12, 2000. At that time, Plaintiff's surgeon implanted a Howmedica Duracon Total Knee system. Thereafter, Plaintiff enjoyed a year of improved mobility and decreased pain.

Nonetheless, Plaintiff's medical records reveal that by October 2001 he was once again experiencing pain and swelling in his right knee. Despite various treatments, Plaintiff continued to have problems that his doctors attributed to chronic infection. When Plaintiff's condition failed to improve after several years, Plaintiff's doctor began to speculate that the tibial component of Plaintiff's prosthetic knee might have loosened, causing the pain and swelling. In an attempt to remedy the suspected loosening, Plaintiff underwent revision surgery on July 5, 2004. At that time, Plaintiff's prosthetic knee was removed and the surgeon discovered that the tibial base plate component of the prosthesis had a "definite fracture." The fractured plate had damaged the surface of the bone requiring that the bone be shaved down four to five millimeters before a new prosthesis

2

could be implanted. Plaintiff has continued to experience knee problems since the July 2004 surgery.

Plaintiff brought the present suit in state court on July 3, 2007, alleging that some of the prosthetic components of his Howmedica Duracon Total Knee system were defective and failed prematurely after implantation. On August 8, 2007, defendants removed Plaintiff's complaint to this Court pursuant to 28 U.S.C. §1441. On September 13, 2007, the parties stipulated to the dismissal of all of the defendants except for Howmedica Ostenics Corp. ("Defendant"). Defendant brought the present motion for partial summary judgment pursuant to Federal Rule of Civil Procedure 56(c) on June 20, 2008.

## II. Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 2512 (1986). After adequate time for discovery and upon motion, Rule 56(c) mandates summary judgment against a party who fails to establish the existence of an element essential to that party's case and on which that party bears the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). The movant has an initial burden of showing "the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. at 2553. Once the movant meets this burden, the non-movant

must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 1356 (1986). To demonstrate a genuine issue, the non-movant must present sufficient evidence upon which a jury could reasonably find for the non-movant; a "scintilla of evidence" is insufficient. *Liberty Lobby*, 477 U.S. at 252, 106 S. Ct. at 2512.

The court must accept as true the non-movant's evidence and draw "all justifiable inferences" in the non-movant's favor. *Id.* at 255, 106 S. Ct. at 2513. The inquiry is whether the evidence presented is such that a jury applying the relevant evidentiary standard could "reasonably find for either the plaintiff or the defendant." *Id.* at 255, 106 S. Ct. at 2514.

**III. Plaintiff's MCPA Claim**

Defendant seeks summary judgment on Plaintiff's MCPA claim, arguing that the transaction or conduct at issue, i.e., sale of the prosthetic knee was regulated by the Food and Drug Administration ("FDA") and, therefore, cannot form the basis of a MCPA claim.

The MCPA protects Michigan consumers from "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." Mich. Comp. Laws § 445.903(1). Plaintiff claims that Defendant failed to provide the promised benefits of the prosthetic knee to him in violation of section (y) of the MCPA. Mich. Comp. Laws § 445.209(1)(y). Mich. Comp. Laws § 445.904(1)(a) provides that the MCPA does not apply to "[a] transaction or conduct specifically authorized under laws

4

administered by a regulatory board or officer acting under statutory authority of this state or the United States." The Michigan Supreme Court has held that, in determining if a transaction or conduct is exempt from the scope of the MCPA, "the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is 'specifically authorized.' Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." *Smith v. Globe Life Ins. Co.*, 460 Mich. 446, 465, 597 N.W.2d 28, 38 (1999).

Here, the specific misconduct Plaintiff complains of is Defendant's "failure to provide the promised benefits in connection-ion [sic] with the transaction at issue." (Compl. ¶ 30.) The general transaction, however, is the sale of the prosthetic knee. Prosthetic knees are medical devices, which are heavily regulated by the FDA. 21 C.F.R. 820 *et seq.* In fact, the FDA specifically authorized Defendant to market the prosthetic knee at issue in this litigation. (Def.'s Mot., Ex A.) Because Defendant was specifically authorized to sell the prosthetic knee at issue, even though Plaintiff alleges that the device was defective, the MPCA does not apply. Defendant is, therefore, entitled to summary judgment on Plaintiff's MPCA claim.

## IV. Plaintiff's Products Liability Claim

Defendant also seeks summary judgment on Plaintiff's statutory products liability claim on the basis that it is time-barred. Defendant suggests that the relevant dates for this analysis are October 2001 when Plaintiff first complained of pain associated with his prosthetic knee and July 2007 when Plaintiff filed this action–a span of almost six years.

5

The statute of limitations for a products liability claim is three years. Mich. Comp. Laws § 600.5805(13). A products liability claim "accrues at the time the wrong upon which the claim is based was done regardless of the time when damage results." Mich. Comp. Laws § 600.5827. On July 25, 2007, the Michigan Supreme Court held that this statutory definition of "accrues" prohibits use of the common law "discovery rule" in Michigan. *Trentadue v. Gorton*, 479 Mich. 378, 389, 738 N.W.2d 664, 670 (2007). The common law discovery rule provides that "a claim does not accrue until a plaintiff knows, or objectively should know, that he has a cause of action and can allege it in a proper complaint." *Id.* Prior to *Trentadue*, Michigan courts applied the discovery rule to cases governed by Mich. Comp. Law § 600.5827 by using a definition of "accrues" that incorporates a discovery requirement. *See, e.g.*, *Thomas v. Process Equipment Corp.*, 154 Mich. App. 78, 86; 397 N.W.2d 224, 227 (1986) ("In determining when a cause of action accrues for purposes of a statute of limitations, the general rule is that a cause accrues only when all the necessary elements have occurred and can be alleged in a proper complaint."). *Trentadue* overruled these cases. *Trentadue*, 479 Mich. at 393, 738 N.W.2d at 672.

Nonetheless, Plaintiff attempts to rely on these cases and asserts that the limitation period did not begin to accrue until he discovered the cause of his knee problems–allegedly the fractured prosthesis–on July 5, 2004. Plaintiff attempts to distinguish his case from *Trentadue* by noting that *Trentadue* involved a wrongful death claim as opposed to products liability. The *Trentadue* court made clear, however, that its

6

holding was based on the language of the entire "statutory scheme" governing statutes of limitations and particularly the plain language of Mich Comp. Law § 600.5827, which applies to both wrongful death and products liability actions.[1]  *Trentadue*, 479 Mich. at 391-92, 738 N.W.2d at 671-72; *see also Terlecki v. Stewart*, 278 Mich. App. 644, 754 N.W.2d 899, 906 (applying *Trentadue* to claims of negligence, per se negligence, nuisance, trespass, and conspiracy).  This Court, therefore, cannot ignore the relevance of *Trentadue* to Plaintiff's suit.

At first glance, application of Mich. Comp. Law § 600.5827 and *Trentadue* to this case appears to require the conclusion that Plaintiff's products liability claim is time-barred.  The relevant statutory period for products liability claims is three years and that period began to accrue when the wrong occurred or, more specific to this case, when the tibial base plate of Plaintiff's prosthetic knee fractured.  Assuming for the sake of argument, that the fracture occurred at least two days before the prosthesis was removed on July 5, 2004,[2] Plaintiff's July 3, 2007, products liability claim is time barred.

---

[1] Mich. Comp. Law § 600.5827 applies to all causes of action not covered by sections 5829 to 5838.  None of these latter sections apply to wrongful death or products liability actions.

[2] The date of the fracture creates an issue of fact in this case because, from the time the prosthesis was implanted in June 2000 until it was removed in July 2004, it is unknown when the fracture took place.  The Court's assumption that the fracture occurred before July 3, 2004, is supported by the fact that Plaintiff began complaining of pain and swelling in October 2001.  For reasons discussed below, however, the precise date of the fracture is an issue that need not detain the Court.

This analysis also assumes, however, that the July 25, 2007, holding in *Trentadue* retroactively applies to Plaintiff's July 3, 2007, claim. Indeed, Defendant argues that *Trentadue* must apply since the Michigan Supreme Court "specifically rejected a dissenting Justice's argument that the decision should be given prospective-only application," (Def.'s Mot. at 8 n.7), and Plaintiff made no counter-argument. Even so, *Trentadue* cannot be retroactively applied to Plaintiff's claim without violating due process and the doctrine of equitable tolling.

Vital to the Michigan Supreme Court's holding that *Trentadue* should apply retroactively was the assumption that "by its nature, the discovery rule does not create expectation or reliance interests." 479 Mich. at 393, 738 N.W.2d at 672. The Court explained, "A plaintiff does not decide to postpone asserting a claim because he relies on the availability of extrastatutory discovery-based tolling. To the contrary, discovery-based tolling is a retroactive mechanism for relief to be used only when a plaintiff could not anticipate his claims." *Id.* These generalizations, however, assume timelines similar to that in *Trentadue*. In that case, Trentadue did not discover a necessary element of her claim until long after the close of the statutory period. *Id.* at 383-84, 738 N.W.2d at 667. Therefore, Trentadue's delay in bringing suit was not because of the discovery rule but because she could not properly allege all elements of her claim until the statute of limitations had already run. Plaintiff's case is distinguishable in an important way.

Unlike Trentadue, Plaintiff can claim actual reliance on the discovery rule because he discovered his claim before the expiration of the relevant limitation period.

8

Assuming that the prosthesis fractured when Plaintiff first began to complain about pain and swelling in October 2001, he had until October 2004 to file a products liability claim. Plaintiff discovered all the necessary elements of his products liability claim when the prosthesis was surgically removed on July 5, 2004, giving him roughly three months to file suit. At that time, however, Michigan continued to recognize and apply the common law discovery rule. Applying that rule, Plaintiff could have decided to postpone the filing of his claim until July 5, 2007–roughly three weeks before the *Trentadue* decision. Indeed, Plaintiff did postpone his claim until July 3, 2007. Based on these unique circumstances, Plaintiff's case presents an exception to the Michigan Supreme Court's generalization that "the very nature of the discovery rule defies any reliance on its operation." 479 Mich. at 401, 738 N.W.2d at 677.

Because Plaintiff could not have known in October 2004 that the Michigan Supreme Court would later reject use of the discovery rule, it would be unfair to apply *Trentadue* to Plaintiff's claim. In addressing whether its decision violated due process, the *Trentadue* Court suggested that rejection of the discovery rule would constitute a violation if it extinguished existing causes of action. *Id.* at 402-03, 738 N.W.2d at 677-78 (discussing *Price v. Hopkin*, 13 Mich. 318, 322-24 (1865)). Applying *Trentadue* to the present case would have such an effect. Furthermore, the *Trentadue* Court explained that application of the equitable tolling doctrine in Michigan is appropriate where "courts themselves have created confusion" and a plaintiff has "detrimentally relied on confusing, pre-existing case law." *Id.* at 406, 738 N.W.2d at 679. In this case, it was not

9

unreasonable for Plaintiff to rely on pre-*Trentadue* case law to justify bringing his products liability claim beyond the statutorily defined limitation period.  Whether characterized as an issue of due process or equitable tolling, Plaintiff's claim cannot be barred by *Trentadue*.  Because Plaintiff had a right to rely on the discovery rule in postponing his products liability suit until July 3, 2007, the Michigan Supreme Court's subsequent holding in *Trentadue* cannot extinguish his claim.  Summary judgment on this claim must therefore be denied.

For the reasons set forth above, the Court **GRANTS** Defendant's Motion for Summary Judgment on Plaintiff's Michigan Consumer Protection Act claim (Count III, Compl.), but **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's "Statutory Products Liability" claim of Count I of the complaint.

**SO ORDERED**.

PATRICK J. DUGGAN  
UNITED STATES DISTRICT JUDGE

Copies to:  
Charles B. Ebel  
Jill M. Wheaton  
Krista L. Lenart